UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LATESIA ANN REED,

    Plaintiff,

v.                                            Case No: 8:17-cv-679-T-DNF

NANCY BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## **OPINION AND ORDER**

Plaintiff, Latesia Ann Reed, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

On September 24, 2013, Plaintiff filed an application for a period of disability and DIB, and an application for SSI alleging a disability onset date of August 9, 2013. (Tr. 31). Plaintiff's applications were denied initially on October 15, 2013, and upon reconsideration on December 5, 2013. (Tr. 132-34, 136-38, 141-45, 148-52). Plaintiff requested an administrative hearing and, on July 28, 2015, a hearing was held before Administrative Law Judge ("ALJ") Glen H. Watkins. (Tr. 50-78). On September 15, 2015, the ALJ entered a decision finding Plaintiff not disabled. (Tr. 31-49). Plaintiff requested review of the ALJ's decision and, on February 8, 2017, the Appeals Council denied Plaintiff's request for review. (Tr. 1). Plaintiff commenced the instant action by Complaint (Doc. 1) on March 23, 2017.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity August 9, 2013, the alleged onset date. (Tr. 33). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease in knees, hypothyroidism, obesity, diabetes, blindness in the left eye, depression, and anxiety. (Tr. 33). At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 35).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift twenty pounds occasionally and lift and carry ten pounds frequently. The claimant can stand or walk for approximately six hours out of an eight-hour day and sit for approximately six hours out of an eight-hour day with normal breaks. The claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and crawl. The claimant must avoid concentrated exposure to extreme cold, extreme heat, and avoid even moderate exposure to vibrations. The claimant is limited to occupations requiring only frequent near acuity, frequent far acuity, frequent depth perception, frequent accommodation, frequent color vision, and frequent field of vision. The claimant limited to unskilled work, SVP 1 or 2, simple, routine, repetitive tasks.

(Tr. 37). At step four, the ALJ found that Plaintiff could not perform her past relevant work as a "cleaner-house," "cleaner-medical," and "mailroom worker." (Tr. 41).

At step five, relying on the testimony of a vocational expert, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 42). Specifically, the ALJ found that Plaintiff was capable of performing such jobs as "packing poly packer," "assembly, small products," and "marker." (Tr. 42). The ALJ concluded that Plaintiff was not under a disability from August 9, 2013, the alleged onset date, through the date of the decision, September 15, 2015. (Tr. 42-43).

**II.    Analysis**

Plaintiff raises a single issue on appeal: whether the ALJ erred by failing to fully and adequately develop the record and consider the vocational ramifications of Plaintiff's left eye

blindness. (Doc. 24 p. 6). Plaintiff contends that the ALJ unilaterally determined, without any medical opinion, that Plaintiff's monocular vision caused a limitation to no more than frequent near acuity, frequent far acuity, frequent depth perception, frequent accommodation, frequent color vision, and frequent field of vision. (Doc. 24 p. 7). Plaintiff contends that the ALJ implicitly found that there were no limitations because of the blind left eye as to avoidance of hazards or unprotected heights. (Doc. 24 p. 7). Plaintiff contends that it is unknown how the ALJ determined these functional limitations and that it is unclear how the ALJ's usage of "frequent" relates to vision problems. (Doc. 24 p. 8). Plaintiff argues that the ALJ should have ordered a consultative examination to determine Plaintiff's visual limitations. (Doc. 24 p. 8-10). In addition, Plaintiff argues that the hypothetical question posed to the vocational expert did not comprehensively describe the impairments imposed by Plaintiff's left eye blindness and, thus, the vocational expert's testimony does not constitute substantial evidence. (Doc. 24 p. 10).

In response, Defendant argues that the ALJ fully considered Plaintiff's vision impairments and properly determined that she was restricted to only frequent near acuity, frequent far acuity, frequent depth perception, frequent accommodation, frequent color vision, and frequent field of vision. (Doc. 27 p. 1). Defendant argues that the ALJ's decision demonstrates that he fully reviewed the evidence and his assessment is supported by the expert medical opinion of Glenn Bigsby, D.O., Plaintiff's medical records, and Plaintiff's daily activities. (Doc. 27 p. 1). Defendant notes that despite Plaintiff's claim that the ALJ failed to fully develop the record, her representative had no objections to the record nor requested a consultative exam at the administrative hearing. (Doc. 27 p. 1).

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125

F.3d 1436, 1440 (11th Cir. 1997). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Commissioner of Social Security*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all of the relevant evidence of record. *Barrio v. Commissioner of Social Security*, 394 F. App'x 635, 637 (11th Cir. 2010). However, the Eleventh Circuit has consistently held that "the claimant bears the burden of proving that [she] is disabled, and consequently, [she] is responsible for producing evidence in support of her claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

In this case, the Court finds that substantial evidence does not support the ALJ's visual limitation findings. In his decision, the ALJ provided no explanation as to how he determined Plaintiff's precise visual limitations. Instead, the ALJ stated that "the undersigned included visual limitations based on the claimant's blindness in her left eye. However, the claimant's right eye vision is 20/25. Thus, she should still be able to perform the visual requirements of the residual functional capacity." (Tr. 40). The ALJ provided no analysis explaining how Plaintiff's left eye blindness and right eye 20/25 vision limits her to only frequent near acuity, frequent far acuity, frequent depth perception, frequent accommodation, frequent color vision, and frequent field of vision.

The Court rejects Defendant's claim that the ALJ's visual limitation findings are supported by the opinion of Dr. Bigsby. The record shows that Dr. Bigsby opined that Plaintiff had limited near acuity, far acuity, depth perception, accommodation, color vision, and field of vision. (Tr. 108). Dr. Bigsby explained that these limitations were due to Plaintiff's blind left eye. (Tr. 108). Dr. Bigsby did not state, however, that Plaintiff had "frequent" limitations in these visual function categories. The ALJ's usage of "frequent" is nonsensical and appears misplaced. Nowhere in the

ALJ's decision does the ALJ explain what is meant by "frequent" as it applies to visual limitations and Defendant does not address this usage in her memorandum of law. *See Gainey v. Comm'r of Soc. Sec.*, 2014 WL 505117, at *4 (M.D. Fla. Feb. 7, 2014). It is not obvious to the Court that "limited" and "frequent" are synonymous terms that can be substituted without explanation.

Furthermore, the ALJ did not discuss and accord great weight to Dr. Bigsby's opinion as Defendant claims. In his decision, the ALJ provided that "the undersigned affords great weight to the State agency psychological consultant's opinion" and cited to Exhibit 5A. (Tr. 41). Exhibit 5A contains a Psychiatric Review Technique from psychologist Barbara Lewis, Ph.D., as well as an RFC assessment by Dr. Bigsby. (Tr. 97-111). The ALJ's discussion of Exhibit 5A demonstrates that the ALJ gave great weight to the opinion of Dr. Lewis, the psychologist. (Tr. 41). Dr. Bigsby and his RFC are not even mentioned.

On remand, the Court will require the ALJ to reevaluate Plaintiff's visual limitations, specifically weigh Dr. Bigsby's opinion, and conduct any further proceedings as necessary.

**III. Conclusion**

The decision of the Commissioner is **REVERSED AND REMANDED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 21, 2018.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties